# BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP

80 PINE STREET, 32ND FLOOR

NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616

FACSIMILE: (212) 509-8088

WWW.BMBBLAW.COM

JONATHAN BEN-ASHER
JOHN A. BERANBAUM°
MARK H. BIERMAN
BRUCE E. MENKEN

JASON J. ROZGER ᴬ
TODD A. KRICHMAR
KRISTEN FINLON

STEPHEN H. PALITZ
OF COUNSEL

° ALSO ADMITTED NJ, PA
ᴬ ALSO ADMITTED NJ

August 25, 2006

**VIA FAX 718-613-2185 AND ECF**
Hon. Kiyo A. Matsumoto
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: **Abdou v. Gurrieri**
> **U.S.D.C. E.D.N.Y.**
> **Case No. 05-CV-3946 (JG)(KAM)**

Dear Judge Matsumoto:

This office represents plaintiff Sheriff Abdou in the above matter.

Please accept this letter as plaintiff's motion for an order: (1) directing the defendants to execute and return to this office FBI Privacy Waiver and Certification of Identity Forms ("FBI privacy waivers"); (2) directing the FBI provide an unredacted copy of their records concerning their investigation of plaintiff; and (3) directing the FBI to produce Detective Anthony Quagliariello of the Joint Terrorism Task Force ("JTTF") for a deposition.

### Plaintiff's Efforts to Obtain Discovery of the FBI Records

In this housing discrimination case, the plaintiff seeks damages for, *inter alia*, the malicious and retaliatory conduct of his former landlord, defendant Emmanuel Gurrieri, in making a false and unfounded report to the FBI that plaintiff allegedly was involved in terrorist activity. Plaintiff seeks to discover what the FBI's records show Mr. Gurrieri reported, as this information is material to the issues of defendants' liability on plaintiff's retaliation claim, and plaintiff's resulting damages. Plaintiff also seeks to take the deposition of Detective Quagliariello in order to discover how the investigation appeared to affect plaintiff. Upon information and belief, this matter would lead to the discovery of admissible evidence concerning the basis of Mr. Gurrieri's report to the FBI, whether it was made in good faith, and in what respect the accusation and investigation caused distress to

plaintiff.

In accordance with this Court's prior orders and 28 C.F.R. § 16.21 *et seq.* (the *"Touhy* regulations"), this office timely served on the FBI demands for their records concerning their investigation of plaintiff and for a deposition of Detective Quagliariello regarding this matter.

We also sent to defendants' counsel FBI privacy waivers for the defendants, and requested that they be completed and returned to us. Defendants' counsel has advised me that his clients refuse to sign the waivers unless directed to do so by the Court.

On August 22, 2006, the Department of Justice ("DOJ") served a response to plaintiff's demands, citing sections 16.26(b)(4) and (5) of the *Touhy* regulations, and asserted:

> the investigatory files privilege; the confidential informant privilege (only to the extent that the FBI has withheld the identity of informants whose identities have not previously been disclosed in the public domain); and the law enforcement privilege.

In reliance upon its assertion of those privileges, the DOJ has provided heavily redacted documents which do not reveal the identity of the informant or the substance of the allegations against plaintiff; and has advised that Detective Quagliariello "is not currently authorized to provide testimony providing the above-referenced investigation." DOJ has provided no explanation as to how the asserted privileges apply, or why Detective Quagliariello is not authorized to provide testimony.

The unredacted portion of the records state that the allegations against plaintiff have "no nexus to terrorism and it is requested that this lead be marked covered" and that the "case be closed." (A copy of the DOJ's response will be made available upon the Court's request, but is not being provided at this time because it exceeds the five-page limit for fax submissions specified under Your Honor's rules).

### The Government's Burden for Establishing Law Enforcement-Related Privileges

In SEC v. Thrasher, 1995 U.S. Dist. LEXIS 1355, *32-*33 (S.D.N.Y. 1995), the court noted that:

> law enforcement privilege, investigatory file privilege... and informant privilege... are slightly disparate but overlapping principles which have in common that the protection they afford a governmental body is conditioned on a specific showing of harm by the agency if the information were disclosed [citations omitted]. Moreover, irrespective of the precise label placed on the asserted privilege, it offers only a qualified protection to the agency, and thus can be overcome by a showing on the part of the requesting party that his

2

need for the information outweighs the purported harm cited by the agency [internal citations and quotations omitted].

A party invoking a privilege bears the burden of showing facts establishing the privilege, which requires more than mere conclusory statements. Von Bulow v. Von Bulow, 811 F.2d 136, 144-146 (2d Cir.), cert. denied, 481 U.S. 1015 (1987). This Court has noted that "Federal law disfavors privileges barring disclosure of relevant evidence, and limits 'even those rooted in the [Federal] Constitution.'" King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)(quoting Herbert v. Lando, 441 U.S. 153, 175 [1979]).

In King v. Conde, *supra* at 189, this Court established a balancing test for determining whether law enforcement materials are exempt from disclosure. The Court noted that, in order for the privilege to be even considered:

> [t]he government must specify which documents or class of documents are privileged and for what reasons. This threshold showing must explain the reasons for nondisclosure with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information. Unless the government, through competent declarations, shows the court *what interests* [of law enforcement or privacy] would be harmed, *how* disclosure under a protective order would cause the harm, *how much* harm there would be, the court cannot conduct a meaningful balancing analysis. If the police make no such showing, the court has no choice but to order disclosure. [emphasis in original][internal citations and quotations omitted].

## The "Confidential Informant" Privilege Does Not Apply

In its response, the FBI concedes that the "confidential informant" privilege applies only to the extent that the informant's identity has "not previously been disclosed in the public domain." Here, it is a matter of public record that Mr. Gurrieri contacted the FBI about plaintiff. See Answer at ¶ 8. Therefore, as Mr. Gurrieri is not a confidential informant, the privilege cannot apply.

In any event, the "confidential informant" privilege is limited, and must be balanced against the need for disclosure. In Rovario v. United States, 353 U.S. 53, 60-62 (1957) the Supreme Court held:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law [citations omitted]. The

3

purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation...

The scope of the privilege is limited by its underlying purpose.... [O]nce the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.... A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant...., or is essential to a fair determination of a cause, the privilege must give way.

Thus, in determining whether to apply the "confidential informant" privilege, courts balance a litigant's need to discover the informant's identity and the substance of his communications, against the governmental need to protect the anonymity of informants in order to encourage cooperation in law enforcement. Where the government's interest is not at stake, disclosure should be required. See, e.g., Wahad v. FBI, 131 F.R.D. 60 (S.D.N.Y. 1990)(Denying application of privilege where litigant's interest in discovering informant outweighed governmental interest).

Here, the plaintiff's need for discovery far outweighs the government's need to protect the confidentiality of informants. The substance of Mr. Gurrieri's allegations are central to plaintiff's claims, in that they are material to showing Mr. Gurrieri's animus toward the plaintiff, and the circumstances which proximately caused plaintiff's injuries. On the other hand, the government has no interest in protecting a confidential source, because it is no secret that Mr. Gurrieri was the informant.

### Defendants Should Be Directed to Provide FBI Privacy Waivers

Section 16.26(b)(4) of the *Touhy* regulations allow for disclosure of information concerning a confidential source where the source has no objection. Consistent with this regulation, DOJ previously indicated to the Court that information concerning third parties contained in FBI records concerning plaintiff could be released if we provide "signed waivers from those third parties." See Letter dated July 12, 2006 from Orelia E. Merchant, AUSA at p. 3.

Defendants' bald refusal to provide FBI privacy disclosures is untenable, because, as discussed above, no confidential matters are at issue here. First, defendants admit that Mr. Gurrieri was the informant. See Answer at ¶ 8. Second, Mr. Gurrieri has already testified at his deposition about what he claims to have reported to the FBI. Plaintiff requires discovery of the FBI records to determine whether the FBI's records are consistent with Mr. Gurrieri's testimony. Defendants should not be permitted to hide behind a phantom privacy interest in order to prevent plaintiff from

4

testing the veracity of Mr. Gurrieri's deposition testimony. Accordingly, defendants' refusal appears to be intended merely to frustrate plaintiff's legitimate discovery needs, and should not be countenanced by the Court.

Defendants' refusal is particularly unfair because plaintiff has provided defendants with all required discovery and authorizations, and plaintiff will be prejudiced in his preparation for trial if he cannot obtain the desired authorizations need for him to obtain the complete FBI file.

### The "Investigatory Files" and "Law Enforcement" Privileges Do Not Apply

Section 16.26(b)(5) of the *Touhy* regulations limits disclosure of information "that would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement techniques and procedures the effectiveness of which would thereby be impaired." DOJ does not specify how the disclosure of the unredacted file on plaintiff, or a short deposition of Detective Quagliariello (which could be conducted at his office), would in any way interfere with or impair enforcement techniques or procedures.

Here, plaintiff seeks to discover only what was reported about him to the FBI, and the substance of the resulting investigation, which, upon information and belief, was terminated in or about March 2005. The redacted records that the FBI has provided do not indicate that any other individual being investigated by the FBI or JTTF is mentioned. Moreover, plaintiff seeks information only concerning the closed investigation concerning himself, and not any other investigation, or the wider anti-terrorism efforts of the FBI and JTTF.

The FBI has made only the bald and conclusory statement that the so-called "investigatory files" and "law enforcement" privileges apply, without providing any of the information specified above in King v. Conde, *supra*.

### Conclusion

Accordingly, plaintiff respectfully requests that the Court determine that the privileges asserted by the FBI do not apply, direct the FBI to produce to plaintiff the complete and unredacted file it compiled regarding the investigation of plaintiff, permit Detective Quagliariello to be deposed regarding same, and direct both defendants to provide the requested FBI privacy waivers.[1]

Respectfully submitted,

Todd A. Krichmar (TK-0524)

cc: Timothy J. Dunn, III, Esq. (Via ECF)
Orelia E. Merchant, AUSA (Via Fax 718-254-6081)

---

[1] Although the information obtained so far indicates that only defendant Emanuel Gurrieri communicated with the FBI, we cannot know with certainty that the FBI records do not reflect communications with Marie Gurrieri until the unredacted records are provided. Therefore, plaintiff seeks waivers from both defendants.