

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*One Pierrepont Plaza*
*Brooklyn, New York  11201*

Mailing Address:   147 Pierrepont Street
*Brooklyn, New York  11201*

September 1, 2006

The Honorable Kiyo A. Matsumoto
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    ***Abdou v. Guirrieri et al.***
           Civil Action No.: CV 05-3946  (Glesson, J.) (Matsumoto, M.J.)

Dear Magistrate Judge Matsumoto:

        The undersigned Assistant United States Attorney writes on behalf of the Federal Bureau of Investigations ("FBI") in response to plaintiff's letter dated August 25, 2006 ("Plaintiff's Letter").  Plaintiff's Letter requests that the Court direct the FBI to provide an unredacted copy of records concerning its investigation of plaintiff and to produce Detective Quagliariello of the Joint Terrorism Task Force ("JTTF") to appear for a deposition.  See Plaintiff's Letter, p.1.

        As set forth more fully below, the FBI has produced records with redactions excluding portions to which the government asserts the confidential informant privilege, investigatory privilege, and law enforcement privilege.  The FBI respectfully requests that plaintiff's requests be denied and that the subpoena for the testimony of Detective Quagliariello be quashed.

**RELEVANT BACKGROUND**

        The Court issued an order denying without prejudice plaintiff's motion to compel enforcement of subpoenas seeking documents and testimony from the non-party FBI.  See Order, dated July 24, 2006.  The Court ordered that plaintiff must comply with the "Touhy regulations," 28 C.F.R. §§ 16.21 et seq., no later than August 4, 2006, should he wish to pursue discovery from the FBI.  Id.

2

       On or about August 2, 20006, the FBI received subpoenas issued by plaintiff's counsel, Todd Krichmar, Esq, demanding the deposition of Detective Quagliariello, a federally-deputized member of the JTTF.  See Exhibit A.  The subpoenas further purport to seek the production of:

> All documents and records in your possession, custody and/or control concerning any investigation by the FBI and/or Joint Terrorism Task Force during 2004-2005 concerning Sherif Abdou, including but not limited to interview notes, correspondence, surveillance materials, warrants, subpoenas and court filings and/or orders.

Id.  Attached to the subpoenas was a privacy waiver executed by Sheriff Abdou, the plaintiff in the instant action.  Id.  The subpoena was not accompanied by a waiver executed by the confidential informant.  Id.

       On August 22, 2006, the Department of Justice served a response to plaintiff's demands.  See Letter from AUSA Merchant to Todd Krichmar, dated August 21, 2006 (the "DOJ's Touhy Letter"), attached hereto as Exhibit B.  The FBI produced documents with redactions to exclude material that is protected by the confidential informant privilege (only to the extent that the FBI has withheld the identity of informants whose identities have not previously been disclosed in the public domain); the investigatory files privilege; and the law enforcement privilege.  See Exhibit B (DOJ's Touhy Response Letter at 2-3 and documents Bates stamped FBI0001-FBI0005.  The FBI objected to the demand for oral testimony on the grounds that the testimony that Mr. Abdou intends on eliciting from Detective Quagliariello is protected by Touhy, 5 U.S.C. § 301; the investigatory files privilege; the confidential informant privilege (only to the extent the that the FBI has withheld the identity of informants whose identities have not previously been disclosed in the public domain); and the law enforcement privilege.  Id.

       To dated plaintiff has not provided the Government with evidence that the identity of the confidential informant is in the public domain.  The information that had been redacted from the FBI's production was information that would have identified the confidential informant, who had been promised confidentiality by the FBI.

       In response to the DOJ's August 22, 2006 Touhy Letter, plaintiff filed the instant letter motion with the Court seeking an order directing the FBI to provide an unredacted copy of its records concerning its investigation of plaintiff and directing the FBI to produce Detective Quagliariello for a deposition in the underlying civil action.  See Plaintiff's Letter, p. 1.

       The FBI submits this response to Plaintiff's Letter.

3

## ARGUMENT

**1.    The FBI's Disclosure is Governed by DOJ's Touhy Regulations**.

The FBI is an agency of the Department of Justice ("DOJ"), and its compliance with any subpoenas when it is not a party to the underlying litigation, is governed by 28 C.F.R. §§ 16.21-16.29 ("DOJ's Touhy regulations").  The statutory authority for DOJ's Touhy regulations is found at 5 U.S.C. § 301, which authorizes the head of every Executive Branch agency to "prescribe regulations for the government of his department, the conduct of his employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property." See United States ex. rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951).  Courts have recognized that Touhy regulations serve the legitimate purpose of "conserv[ing] governmental resources where the United States is not a party to a suit and . . . minimiz[ing] governmental involvement in controversial matters unrelated to official business."  Boron Oil Co. v. Downie, 873 F.2d 67, 73 (4th Cir. 1989).  Such regulations also serve to "centraliz[e] determinations [within the agency] as to whether subpoenas . . . will be willingly obeyed or challenged," thereby avoiding "the possibilities of harm from unrestricted disclosure in court." Touhy, 340 U.S. at 468.

The Touhy regulations have been consistently upheld as valid by the United States Supreme Court and courts in numerous jurisdictions. See, e.g., Touhy, 340 U.S. at 468 ( Department of Justice Order No. 3229); In re Elko County Grand Jury v. Siminoe, 109 F.3d 554, 556 (9th Cir. 1997) (Department of Agriculture: 7 C.F.R. § 1.212-.214); Houston Business Journal, Inc. v. Office of the Comptroller of the Currency, 86 F.3d 1208, 1212 (D.C. Cir. 1996) (Comptroller of the Currency: 12 C.F.R. § 4.19); Edwards v. United States Dep't of Justice, 43 F.3d 312, 316-17 (7th Cir. 1994) (Department of Justice: 28 C.F.R. §16.21-.29); Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1197 (11th Cir. 1991) (Health and Human Services: 45 C.F.R. § 2.3(a)).  Therefore, the FBI's compliance with plaintiff's demands for documents and testimony is governed by the DOJ's Touhy regulations.

**2.    DOJ's Touhy Regulations Expressly Bar the Disclosure of the Redacted Information.**

In addition to providing a procedural mechanism for responding to nonparty subpoenas, the DOJ Touhy Regulations expressly prohibit the disclosure of the type of the information sought here.  Section 16.26(b) states in relevant part:

> Among the demands in response to which disclosure will not be
> made by any Department official are those demands with respect to
> which any of the following factors exist:
> \* \* \*
> (4) Disclosure would reveal a confidential source or informant,
> unless the investigative agency and the source or informant have

4

> no objection,
> (5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or discloses investigative techniques and procedures the effectiveness of which would thereby be impaired . . .

28 C.F.R. 16.26(b).

Additionally, the Privacy Act precludes the FBI from disclosing any information concerning any person(s) without either the consent of that person or a jurisdictionally valid court order authorizing the FBI to disclose the required information. See 5 U.S.C. § 552b.

In the instant matter, the FBI records demanded by plaintiff contain information concerning parties other than plaintiff without the appropriate waiver from those individuals or a court order authorizing the FBI to disclose information relating to third parties. See Exhibit B, documents Bates stamped FBI0001-FBI0005. The FBI has produced its records on its investigation of plaintiff in its entirety, albeit with redactions. Id. The redactions did not delete the substantive allegations made against plaintiff. For example, the records reveal that the FBI's "N[ew] Y[ork] O[ffice] receive information regarding an Egyptian mail who was having numerous unknown males in and out of his apartment" and "Detective Quagliariello (Det) was assigned." See FBI0001; see also FBI0005 ("Facts of the Complaint: Above complaint called JTTF call center stating that the above subject is Egyptian and has numerous unknown Middle Eastern Males in and out of the subject's apartment."). The redactions deleted statements that would have identified the complainant who had been promised confidentiality. As far as this Office and the FBI are aware, the informant's identity has not been previously disclosed in the public domain. Plaintiff bears the burden of demonstrating that this information is the public domain.

Plaintiff did not comply with the DOJ's Touhy Regulations in that he did not provide evidence that the confidential informant's identity is in the public domain. This Office would consider any open public pronouncement of the confidential informant that such confidential informant had filed a complaint. This Office is not implying that Gurrieri is the confidential informant, but plaintiff's claim that Gurrieri made an admission is inaccurate. Plaintiff claims that "it is a matter of public record that Mr. Gurrieri contacted the FBI about plaintiff," see Plaintiff's Letter at 3 (citing Answer at ¶ 8). However, defendants specifically deny these allegations, "except admit[] that defendant, Emmanuel Gurrieri *had communication* with the FBI." See Answer at ¶ 8 (emphasis added). Consequently, the FBI does not have authority to disclose information relating to any third parties.[1] See 28 C.F.R. § 16.26 (b)(4) &

---

[1] Plaintiff cites to King v. Conde, 121 F.R.D. 180, 189 (E.D.N.Y. 1988), as the test for determining whether law enforcement materials are exempt from disclosure. See Plaintiff's Letter at 3. However, in that case the court addressed a claim of privilege against disclosure of police materials to a plaintiff raising federal civil rights claims against a police defendant, not a

5

(5); see also Privacy Act, 5 U.S.C. § 552b.  Accordingly, such identifying information has been properly redacted from the FBI records produced to plaintiff.  See Exhibit B, documents Bates stamped FBI0001-FBI0005.

The records requested were compiled for law enforcement purposes and contain confidential information that would identify sources of information.  See Exhibit B, documents Bates stamped FBI0001-FBI0005.  The FBI file reference numbers, case identification numbers, review and approval chain of command names, precedence and priority of the investigation, the lead information and the process and timing of the investigation information that has been redacted from these records are all information compiled for investigation and law enforcement purposes.  Id.  Release of such information would reveal how the FBI follows up on confidential leads and the tools, techniques and procedures utilized in such an investigation.  As such, this information is protected by the investigatory files and law enforcement privileges.  Moreover, plaintiff has not demonstrated a compelling need for this internal information.  Accordingly, under the DOJ's Touhy regulations, such information has been properly redacted from the FBI documents produced to plaintiff.

**3.    The Court Lacks Jurisdiction to Enforce a Subpoena to Federal Employees Such as Detective Quagliariello**.

As explained above, the DOJ's Touhy Regulations prohibit the FBI's employees from testifying when they are instructed not to do so by the agency in accordance with applicable regulations.  See 28 C.F.R. § 16.22(a).  It has repeatedly been held that regulations such as the DOJ's Touhy Regulations impose a binding legal duty on federal employees that the courts cannot force the employees to disobey.  See Codd v. Saks Fifth Avenue, 1998 WL 744025 (S.D.N.Y. Oct. 26, 1998) ("[w]hat is plain from *Touhy* is that . . . when [a federal employee] has been directed pursuant to an undisputedly valid regulation not to testify, a state court is without power to compel him to testify").  In the words of a Fourth Circuit decision, "an unbroken line of authority directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations." Boron Oil, 873 F.2d at 69 (emphasis added).

Moreover, the United States is sovereign and immune from suit in the absence of specific consent to suit.  See Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (quoting United States v. Testan, 424 U.S. 392, 399 (1976)).  It is well established that an action seeking specific relief against a federal actor, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity.  See Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 688 (1949).  The federal government's sovereign immunity applies to proceedings seeking to enforce non-party subpoenas against federal agencies or employees.  See e.g. Boron Oil, 873 F.2d at 71; U.S. v. McLeod, 385 F.2d 734, 752 (5th Cir. 1967).

---

non-party defendant.  Id.  As a result, the analysis in that case is inapposite to the instant motion.

6

An order compelling production in response to a subpoena interferes with the administration of the federal government and "compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." Boron Oil Co., 873 F.2d at 67; see also Environmental Enterprises, Inc. v. United States E.P.A., 664 F.Supp 585, 586 (D.D.C. 1987)(if courts can easily subpoena federal employees, agencies might "find themselves spending all of their time doing nothing but complying with state court orders and . . would have little opportunity to pursue their important governmental responsibilities"). In short, sovereign immunity extends to proceedings where, as here, the effect is to "compel [the government] to act." Dugan v. Rank, 372 U.S. 609, 620 (1963). No federal agency can properly function if its employees are being constantly called from their duties. See United States v. McLeod, 385 F.2d at 752 (citation omitted).

The Supreme Court's decision in Touhy is only one of many cases in which the federal courts have rejected attempts by litigants to force federal employees to provide testimony or documentary evidence where the employees were forbidden to do so by their agency. See, e.g., In re Elko County Grand Jury, 109 F.3d at 556; Houston Business, 86 F.3d at 1212; Edwards, 43 F.3d at 316-17; Moore, 927 F.2d at 1197; Boron Oil Co., 873 F.2d at 74; United States Steel Corp. v. Mattingly, 663 F.2d 68 (10th Cir. 1980), cert. denied, 450 U.S. 980 (1981); Cates v. LTV Aerospace Corp., 480 F.2d 620, 623 (5th Cri. 1973); Hotel Employees Hotel Assoc. Pension Fund v. Timperio, 622 F. Supp. 606, 607-08 (S.D. Fla. 1985); Smith v. C.R.C. Builders Co., 626 F. Supp. 12, 14-15 (D. Colo. 1983); Reynolds Metal Co. V. Crowther, 572 F. Supp. 288, 290-91 (D. Mass. 1982); Marcoux v. Mid-States Livestock, 66 F.R.D. 573, 579 (W.D. Mo. 1975).

Touhy and its progeny dispose of this matter. Here, as in those cases, a federal agency has not given permission for one of its employees to comply with a private litigant's demand for the giving of evidence, e.g., deposition testimony. Here, as in Touhy, a federal regulation prohibits the employee from complying with the request for the giving of evidence, e.g., deposition testimony without the agency's consent. In these circumstances, the result is clear, the court simply "ha[s] no power or authority," Ex Parte Sackett, 74 F.2d 922, 924 (9th Cir. 1935), to compel Detective Quagliariello to obey the subpoena, and therefore, has no choice other than to quash the subpoena. Moreover, the Court may quash the subpoena without having to engage in "a consideration of the merits." Swett v. Schenk, 792 F.2d 1447, 1451 (9th Cir. 1986). Under Touhy and its progeny, it is sufficient that Detective Quagliariello has not received authorization to testify at a deposition.

7

**4.      The Testimony Sought is Privileged Because It Seeks Information Compiled in Connection With A Criminal Investigation.**

Plaintiff claims that the deposition of Detective Quagliariello is necessary in order to discover what was alleged against him, the substance of all interviews with him and any other individuals with whom the FBI and/or JTTF agents spoke in connection with the resulting investigation, and the disposition of the investigation.  See Exhibit A, Abdou Affidavit, ¶¶ 4, 7.  Plaintiff also now claims that he seeks to take the deposition of Detective Quagliariello in order to "discover how the investigation appeared to affect plaintiff."  See Plaintiff's Letter at 1.  Plaintiff did not provide this reason in the affidavit that he provided in support of his subpoena for the deposition of Detective Quagliariello.  See Exhibit A, Affidavit of Sheriff Abdou.  In any event, plaintiff is a source for this information and can testify to this.

The Government's privilege not to disclose records of law enforcement investigations is well recognized.  There surely is such a thing as "qualified common-law privilege . . . for law enforcement investigatory files."  Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1341 (D.C.Cir. 1984); see also Kinoy v. Mitchell, 67 F.R.D. 1, 11 (S.D.N.Y. 1975)(discussing privilege for files compiled in connection with a law enforcement investigation); Sirmans v. City of South Miami, 86 F.R.D. 492, 495 (S.D. Fla. 1980)(referring to the "federal privilege for criminal investigative files"); Jennings v. Johnson, 480 F.Supp. 47, 48 (E.D.Tenn. 1979)(referring to "qualified privilege from discovery" of information compiled during a law enforcement investigation).  This privilege "is based primarily on the harm to law enforcement efforts which might arise from public disclosure of government investigatory files." Association for Women in Science v. Califano, 566 F.2d 339, 343 (D.C. Cir. 1977); see also Jabara v. Kelley, 75 F.R.D. 475, 493-94 (E.D. Mich. 1977).

The information sought here was collected in the course of a criminal investigation, and is therefore privileged from disclosure.  See Exhibit B, documents Bates stamped FBI0001-FBI0005.   Disclosure of these privileged materials should not be permitted.  See In re Dept. of Investigation, 856 F.3d 481, 484 (2d Cir. 1988)("The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation and otherwise to prevent interference with an investigation").  As the Supreme Court has held in another context, information may be withheld, even if relevant to the lawsuit and essential to the establishment of plaintiff's claim.  See Baldridge v. Sharpiro, 455 U.S. 345, 360 (1982).

Additionally, information about confidential sources is barred from production by the confidential informant privilege.  This privilege applies even after the investigation is closed.  See Borchers v. Comm'l Union Assur. Co., 874 F.Supp 78, 80 (S.D.N.Y. 1995)(finding that importance of confidentiality of informants does not disappear when the investigation closes).

8

**CONCLUSION**

        For the foregoing reasons, the plaintiff's application to compel the FBI to produce an unredacted copy of records concerning the investigation of plaintiff and to produce Detective Quagliariello to appear for a deposition should be denied, and the subpoena for the testimony of Detective Quagliariello should be quashed.[2]

        Respectfully submitted,

        ROSLYNN R. MAUSKOPF
        United States Attorney

By:   /s/
        ORELIA E. MERCHANT
        Assistant U.S. Attorney
        (718) 254-6058

cc:    Mark H. Bierman, Esq.
       Todd A. Krichmar, Esq.
       Beranbarum Menken Ben-Asher & Bierman
       80 Pine Street
       New York, NY 10005
       212-509-1616

       Timothy Joseph Dunn, III
       Rebore, Thorpe & Pisarello, P.C.
       500 Bi-county Boulevard
       Farmingdale, NY 11735
       631-249-6600

---

[2] Divulgence of any additional identifying information related to these records would cause disclosure of the allegedly privileged information. Therefore, prior to any determination of release, the government reserves the right to request an *in camera* review consistent with Local Rule 26.2 and applicable case law. See U.S. v. U.S. Currency in Sum of Twenty One Thousand Nine Hundred Dollars, 1999 WL 993721 (E.D.N.Y. 1999)(the Supreme Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection), citing U.S. v. Zolin, 491 U.S. 554, 569 (1989). The FBI further asserts that nothing in this letter should be construed as a waiver of any privilege or objection available to the FBI